12912

ST. CHARLES MERCANTILE CO. v. ARMOUR & CO.

(153 S. E., 473)

398

*Messrs. Thomas H. Moffatt, Fred D. Townsend* and *John W. Crews,* for appellant,

*Messrs. M. L. Smith, C. T. Graydon* and *R. E. Dennis,* for respondent,

May 6, 1930.

The opinion of the Court was delivered by Mr. Justice Blease.

This case seems to be on rather a new line—presenting, perhaps, some new questions—and, accordingly, it is of more than passing interest. But, as we have often found in that wonderful science of the law, new questions arising as to rights between persons, and the remedies for wrongs upon those rights, are answered largely by applying to them old legal principles. Mr. Justice Gage often said, in his characteristic way, "The facts breed the law." We turn, therefore, first to the facts in the case, and, because the exceptions of the appellant require it, we place the plaintiff's color upon them.

St. Charles Mercantile Company, the respondent, was a corporation engaged in the business of general merchandise in Lee County. The appellant, Armour & Co., is also a corporation and engaged in the business of packing and selling meats, etc. The respondent was a customer of the appellant. On May 8, 1926, respondent, through one of its officers, Mathias, gave the traveling representative of the appellant an order for a shipment of "D. S. Butts" at the price of $27.04; and on the 22d of the same month another order for the same kind of meat at the price of $27.95. The orders were delivered. The sales were made on credit terms. Moore, a representative of the appellant, some time about August, on a call to the respondent's place of business, took up with the respondent the payment of the account. Mathias, for the respondent, and Moore agreed to a settlement by which the respondent was to give, and Moore was to accept, a check of the respondent postdated to the first day of September, 1926, for $54.99, the amount of the account. Mathias was certain that this occurred either on the 2d or 3d day of

August, and was positive it did not happen on August 1st, because that day was Sunday. The check was delivered to Moore. It is in the usual form of a bank check. It appears from a sight of the instrument that it was originally dated September 1st and thereafter "Sept." was changed to "Aug." No one authorized for the respondent a change in the date of the check. About August 9, 1926, the appellant deposited the check in the National State Bank at Columbia for collection, which bank forwarded it to the First Merchants National Bank at Richmond, that bank in turn transmitted it to the Federal Reserve Bank at Richmond, and the bank last mentioned sent the check to the drawee bank at Bishopville for payment, the check being received at the Bishopville bank about August 11, 1926. The alteration in the date of the check was made from the time of the delivery of the instrument to the representative of the appellant by Mathias and its presentation to the Bishopville bank. The check was returned by the Bishopville bank to the Federal Reserve Bank with the notation "N. S. F.," meaning "not sufficient funds," because respondent at that time did not have on deposit with the bank necessary funds to take up the check. On August 14, 1926, the branch office of the appellant at Columbia sent the check, direct by mail, in the same altered condition, to the Bishopville bank for collection. The letter to the bank accompanying the check said: "Herewith for collection check August 1st, $54.99 signed St. Charles Mercantile Co. Please let us have Cashier's Check covering less usual exchange, and oblige." It was signed "Armour & Company," and from the stenographer's notation appears to have been dictated by one "B. H." The letter as first written on the typewriter had "September" where August appears in the copy we have made. The word "August" was written above "September" in ink. On the same date, August 14, 1926, the appellant mailed to the respondent at St. Charles what purported to be an exact carbon copy of the letter the appellant had sent on that day to the Bishopville bank. In

this carbon copy, however, the word "September" had not been changed to read "August." The difference in the letter sent the bank and the carbon copy sent the respondent amounted to this: The bank was notified that it was being sent respondent's check dated "August 1st," while the respondent had notice that its check dated "September 1st" was being sent to the bank. Upon receipt of the check the second time, and the letter referred to, the bank, on August 17th, notified the respondent that it held for collection a check of the respondent to the appellant for $54.99. Mathias, for the respondent, was at the bank soon after August 17th, looked at the check which was there for collection, informed the bank officials that the check was not to be paid until September 1st, that its date had been altered and declined to make payment at that time. On August 30th, the respondent deposited in the bank more than a sufficient amount to take care of the check, payment of it was made, and the bank remitted the proceeds to the appellant.

The facts developed at the trial, looking upon them favorably to the respondent's contentions, were brought out in support of the allegations of its complaint. In addition to reciting substantially the facts referred to, that pleading alleged that the appellant, "through its agents and servants, negligently, willfully, recklessly and wantonly changed the date upon said check from September 1, 1926, to August 1, 1926, and falsely gave the check the appearance of being uttered and delivered as and for the 1st of August instead of September 1, 1926, its true date."

The complaint further charged, "that as a result of the negligent, reckless, willful and wanton acts of the defendant, its agents and servants, in changing said date upon said check, in sending out said different and changed notices, in presenting said check before the same was due and in having the same turned down and marked 'not sufficient funds,' tended to injure and impair the credit of the plaintiff herein, to hurt and damage the reputation of the plaintiff for

honesty and fair dealing, to lower the standard of credit of the plaintiff for paying its debts and to have an item turned down and refused payment upon by said negligent, reckless, willful and wanton acts and thereby injuring and damaging the plaintiff in its reputation, and business standing, all to its damage in the sum of three thousand dollars."

The appellant set up three defenses. In the first of these, it alleged that the goods were sold on credit and that the check in payment of the account "was delivered some time on or prior to the first day of August, 1926," and it denied generally the other material allegations of the complaint. In its second defense, it alleged that the check, dated August 1, 1926, was given for the past due account of the respondent to the appellant. Further, that it had made diligent investigation as to the matters in connection with the check and had been unable to determine if the date thereof was changed, or if it was changed, if it was changed in appellants' office; that if the change in the date was made in its office, it was done through error. In its third defense, the appellant reiterated that if the change in the date of the check was made in its office, it was done without the authority of anyone in charge of the office, and that the person who made the change, in doing so, acted beyond the scope of his or her authority.

The appellant offered no evidence.

On the part of the appellant, there was first a motion for a nonsuit, and afterward one for a directed verdict, the grounds of those being mentioned later. Both motions were refused by Honorable W. H. Townsend, circuit Judge, presiding in the Court of Common Pleas for Richland County, where the trial was had.

The case was submitted to the jury, who returned a verdict in favor of the respondent for $2,000.00. The appellant's motion for a new trial was refused.

The exceptions, twelve in number, containing numerous subdivisions of specified error, do not raise near so many

questions. We shall endeavor to cover what we conceive to be the questions necessary for determination, without passing upon the several exceptions *seriatim*.

Following very much the grouping of the questions involved, as appellant has stated them, we take up first the exceptions imputing error to certain portions of the charge. The instructions complained of were as follows:

(a) "If the defendant negligently, recklessly, wantonly or willfully caused the check to be prematurely presented for payment and dishonored, such conduct would be an actionable wrong and would be presumed to have resulted in injuring the credit and commercial standing of the plaintiff."

(b) "If the defendant negligently caused a postdated check given it by the plaintiff to be prematurely presented and dishonored by its payment being refused for insufficient funds in bank, the law would presume in the absence of evidence to the contrary that the plaintiff was thereby caused to suffer substantial damage, temperate in amount on account of injury to its credit.

(c) "Any willful interference with the business of another if followed by damage, is an actionable wrong; and if the defendant willfully caused the premature presentment of a postdated check drawn by plaintiff on a bank, which resulted in the dishonor of the check, because of insufficient funds then being in the bank to pay it, it would be presumed in the absence of any evidence to the contrary, that injury resulted to the credit of the drawer, and his commercial standing from such willful act, and that the plaintiff was entitled to such substantial damages as would compensate him for such injury, as well as for such punitive damage as you may determine from the evidence would be proper punishment for such willful wrong."

(d) "Ordinarily a check on a bank by a depositor may be presented for payment immediately or without delay, provided it is presented within a reasonable time; but when the

check at the time of its issuance is postdated, that is, dated as of a later day, the drawer of the check only agrees and undertakes that on the day named by him in the check he will have the amount of the check to his credit in the bank in order to then pay the check. In the meanwhile the drawer of the check is entitled to the free and full use of his entire deposit, and such postdated check cannot rightfully be presented for acceptance or payment before the day named."

(e) "A corporation is an artificial person composed of an aggregation of natural persons, whose character and reputation may affect the credit and commercial standing of the corporation. The credit and commercial standing of a corporation is its property and it would be entitled to recover damages for any wrongful injury to its credit and commercial standing."

It is quite apparent that, in giving the instructions quoted, the trial Judge, with appropriate changes and additions, followed closely the declarations of legal principles made by this Court in cases involving the failure of, and refusal by, a bank to pay, on proper presentation, a check of a depositor, when the bank had sufficient funds to the depositor's credit to make the payment. The argument against the instructions challenges to some extent their correctness, but it more directly attacks their applicability to the facts of this case.

It is our opinion that the charges contained correct legal principles, and that they are sustained by authority. This Court, with Mr. Justice Cothran speaking for it, has made this concise statement of law: "The theory upon which damages, substantial but temperate in amount, are allowed in such cases [where a bank fails to honor a depositor's check], is that the dishonor of the check presumptively results in injury to the credit of the depositor; it being a declaration against his solvency and correct business dealings." *De Launay v. Union National Bank,* 116 S. C., 215, 107 S. E., 925.

In a case similar to the *De Launay case,* Mr. Justice Hydrick, for this Court, said: "The authorities agree, and this Court has held that in a case like this, plaintiff is entitled to something more than nominal damages; but that the recovery should be temperate in amount." *Wilson v. Palmetto National Bank,* 113 S. C., 508, 101 S. E., 841, 843.

The holding, as shown by the syllabus, in *Lorick v. Palmetto Bank & Trust Co.,* 74 S. C., 185, 54 S. E., 206, 7 Ann. Cas., 818 (first appeal), is as follows: "Refusal of bank to pay check of depositor having funds to his credit by saying the deposit was in the savings department and could not be paid except on presentation of pass-book, is equivalent to a refusal to pay and entitles depositor to temperate damages, and recovery is not dependent upon allegation and proof of special damages."

The cases cited seem to us to be convincing that the legal principles announced by the presiding Judge, in the subdivisions indicated by the letters "a," "b" and "c," were correct statements of the law.

The instructions indicated by the letter "d," as to the effect of a post-dated check, are supported by the decision of this Court in the case of *State v. Winter,* 98 S. C., 294, 82 S. E., 419, 420, where it was said: "If check was dated ahead, and it was expressly stated at the time it was passed that the drawer had no funds in the bank, such check would only mean a promise on the part of the drawer to do a future act and have funds in the bank at the future time stated in the check, and this would be no more than an obligation to pay in the future, and the check would only be an evidence of debt."

See, also, 7 C. J., 674, which is in line with the statement from the *Winter case.*

The appellant has not argued its exception which complained of error in the charge referred to under our subdivision "e." It may, therefore, be considered abandoned. We may say in passing, however, that the in-

struction of the trial Judge, to the effect that the credit and commercial standing of a corporation is its property, and that a corporation would be entitled to recover damages for wrongful injury to its credit and commercial standing, was a correct declaration of law. See 37 C. J., 11.

After reaching the conclusion that the principles of law announced by the presiding Judge were correct, the inquiry leads next to the applicability of the given instructions to the facts of the case at bar.

While the class of cases, such as those of *De Launay, Wilson* and *Lorick, supra,* were decided in actions solely against banks for non-payment of checks alleged to have required payment, we think the legal principles there established were applicable to the facts of this case. This is true, although the actions referred to in the decided cases were held to be on contract (*Lorick v. Bank,* 76 S. C., 500, 57 S. E., 527, second appeal), while we are of the opinion that this cause is one on tort; which view, it appears, was conceded by all the parties in the lower Court.

Certainly, the complaint of the respondent contained allegations appropriate to a recovery on tort, and we find nothing therein which made it an action *ex contractu.* While the complaint contained references to the contract of the appellant and the respondent, looking to the payment of the account of the latter to the former, the allegations thereabout concerned only preliminary matters necessary for a proper understanding of the history of the cause of action alleged. Actions in tort often have their beginning in contractual matters. To illustrate, we point to that class of cases where a common carrier is held liable in tort for failure to convey a passenger, although the relationship of passenger and carrier grows out of contract. Also, in that class of cases are those against telegraph companies for negligence in the transmission and delivery of messages, where there existed a contract for such transmission and delivery. Some cases along these lines are: *Whittle v. Miller Light-*

*ning Rod Co.,* 110 S. C., 557, 96 S. E., 907; *Cabe v. Ligon,* 115 S. C., 376, 105 S. E., 739; *Winthrop v: Allen,* 116 S. C., 388, 108 S. E., 153; *National Bank v. Southern Railway,* 107 S. C., 28, 91 S. E., 972; *Reaves v. Telegraph Co.,* 110 S. C., 233, 96 S. E., 295. See also 38 Cyc., 426 *et seq.*

The real gist of the complaint was that the appellant by changing the date of the check, and falsely making it to appear, what it was not, an instrument demanding immediate payment on proper presentation, and by that presentation, had caused the bank, an innocent agency, to injure the respondent by giving false information to others, who would, and did, receive the check, and see the writing thereon, that the respondent, contrary to honest and correct business dealings, had drawn a check on a bank for money without having at the time and place sufficient funds to meet the payment. While in plain language the complaint did not expressly so charge, it did, by implication, accuse the appellant of forgery, and the uttering of a forged instrument, crimes against the laws of the land, and of instigating an innocent third party thereby to inform others that the respondent had violated a criminal statute in issuing and delivering a bank check without funds at the time to make it good.

Legal principles may be alike applicable to actions both on tort and on contract, just as such principles may also apply with equal force to actions in law and in equity. So, even if the case here sounded in tort, we regard the principles of the case here sounded in tort, we regard the principles of the cases cited, referred to above, which were actions on contract, as proper authorities to aid in a decision of this case, if such principles are applicable.

It was the duty of the bank, when a check which properly demanded payment was presented, to make payment, if the drawer had sufficient funds to meet it. If the funds were not on hand to meet the check, then it was incumbent upon the bank to return it without unnecessary delay, with an explanation of its reason for declining

payment. If the bank was innocently misled in the course it pursued by the improper conduct of the appellant, the appellant was liable for such conduct. The injury to the respondent, presumed by the law to have been sustained, was occasioned, it is true, by the act of the bank in declaring the check non-payable on account of lack of funds, which declaration was true in part and false in part. If the check had required payment at the time of its presentation, the statement that the funds were not on hand would have been correct and no actionable wrong would have resulted in the law. But the check did not demand payment, and the presentation of it under the circumstances, in its false condition, caused the bank to say other than the truth, the failure to have funds to meet it—the wrongful presentation caused the bank to say that the maker's check had been *properly presented* without the necessary funds to meet it, and that declaration was false.

The proximate cause of the injury and damage to the respondent was not the wrongful act of the bank; the proximate cause was in fact the concurring acts of the appellant, first, in altering the check, and second in presenting it in its altered condition. The appellant set in motion the acts of wrong to the respondent. The appellant would not have done a wrong in presenting a postdated check to be paid at the proper time. But it was a wrongful act to present a postdated check with the illegal pretense that it was not such a check, but one requiring immediate payment.

The main principles controlling this case, we think, were announced by our Appellate Court as far back as 1847, in the case of *Harrison v. Berkley*, 32 S. C. L. (1 Strob.), 525, 47 Am. Dec., 578. In that case the plaintiff's slave died from the effects of excessive drinking of alcoholic liquors. It was against the law at that time to sell whiskey to a slave without the owner's consent. The plaintiff sued the tavern-keeper for damages. The defendant resisted recovery on the ground that the sale of the whiskey had been made by him to a "free

negro" (who had the legal right to buy whiskey), and that the free negro passed the whiskey on to the slave. Judgment was rendered against the tavern-keeper, and the law Court of appeals sustained the judgment. Among the important conclusions of the case was this: "Where a party, by his own injurious act, has brought into operation an agent, which concurred to produce the consequence, he is no less liable because it was not immediate on his act." (Syllabus.)

The principles announced in the *Harrison case* have been referred to and approved by this Court in numerous decisions. That case has been cited, perhaps, almost as much as any case decided by the Appellate Court of this State. See Shepard's South Carolina Citations.

The first paragraph of the opinion of Judge D. L. Wardlaw in the *Harrison case* is singularly appropriate to this case. He said: "This action is novel in the instance, but that is no objection to it, if it be not new in principle. The law endures no injury, from which damage has ensued, without some remedy; but directs the application of principles already established, to every new combination of circumstances that may be presented for decision."

Since the appellant was the moving cause in bringing about the act of the bank, it must be apparent that the legal principles applicable to the conduct of a bank in declining to pay a check *properly presented*, where the drawer had sufficient funds to meet it, have also application to this case.

Some of the appellant's grounds for a nonsuit, a directed verdict, and refusal to grant a new trial, remain to be noticed.

It is urged that the conduct of the respondent in paying the altered check, after knowledge of the alteration, amounted to a ratification of that alteration and for that reason the respondent could not recover. The case of *Jacobs v. Gilreath*, 45 S. C., 46, 22 S. E., 757, is cited in support of this position. It was held in the *Jacobs case* that a material alteration made in a promissory note did not ren-

der the contract void as to any party consenting to, or acquiescing in, such alteration. That principle is not applicable, however, here. That case was a suit on a promissory note alleged to have been altered. The suit here was not on the altered check, as we have already indicated. This action was one in tort for wrongful acts already explained.

It was further insisted upon in the lower Court, and also insisted here, that there was no proof in the case that the appellant altered or changed the check; that the proof showed that the check "went into two or three others' hands and by a circuitous route: "Would not the bank in Columbia, where the appellant first placed the check, probably have declined to receive it for collection about August 9th, if the check then clearly bore the date of September 1st? Would the Bishopville bank have marked the check "not sufficient funds" about August 11th, if the check had then shown the correct date of September 1st? Who, except the appellant, had anything to gain by the alteration of the check? All these were questions for the jury. Then, there was the appellant's letter to the bank where the change from September to August had been made. And there was no evidence whatever on the part of the appellant contradicting the very strong inference that the change had been made by some one of the appellant's agents.

It is considered that there was a total failure of proof of any damages sustained by the respondent attributable to any act on the part of the appellant; and, especially, that there was no proof which called for punitive damages. As the bank cases already cited show, damages are presumed for the incorrect turning down of a drawer's check. Moreover, one of respondent's officers testified that after the occurrences, on which the suit was based, certain creditors of the respondent, including the appellant, refused credit.

The violation of a criminal law, which results in any actual damage to a person, is entirely sufficient as the found-

ation for punitive damages. In addition to other things established in the case, there was some evidence going to show that one of the appellant's agents had committed the crime of forgery.

A new trial was asked on the ground that the damages awarded were excessive, unconscionable, and unsupported by the evidence. To support that position, it has been urged that the jury took no account of the fact that the respondent company was insolvent at the time of the alleged occurrence, which resulted in the suit. We are unable to determine what things the jury considered in reaching its verdict. Perhaps, more than the insolvency of the respondent, they were impressed with the fact that the appellant's conduct had been criminal. Forgery, and the uttering of a forged instrument, under the law of this State, are punishable by fine and imprisonment. In its answer, the appellant said that the changing of the check, if made by one of its agents, was a mistake. But the appellant did not offer any evidence to sustain that defense. In fact, there was no explanation of the transaction by the appellant. It simply stood its ground. The presiding Judge, better acquainted with all the happenings in the Court room than we are, did not think the verdict excessive. We agree with him.

Respondent's witness, Mathias, over the objection of the appellant, was permitted to relate some part of a conversation he had about August 20th, a few days before the check was paid, with the teller of the bank regarding the check. At the time the teller, carrying out the instructions to the bank from the appellant, was seeking to collect the check, and Mathias was giving the reason for not making payment, namely, that the check was not to be paid until September 1st. The bank was acting as agent for the appellant in that transaction. The teller was the representative of the bank. The testimony admitted was entirely proper.

Mr. D. A. Quattlebaum, cashier of the First National Bank of Bishopville, was allowed to testify, over the objection of the appellant, that the check in question was first deposited by the appellant with the National State Bank of Columbia, transmitted by that bank to the Federal Reserve Bank, and sent by the last-named bank to his bank; and that his bank returned the check to the Federal Reserve Bank on account of insufficient funds. These transactions, testified to by Mr. Quattlebaum, occurred several days before the check was received by the Bishopville bank direct from the appellant. The appellant contends that this evidence on the part of the witness was not responsive to the allegations of the complaint; and that it was hearsay, as not coming within the personal knowledge of the witness. The check itself was in evidence, and the route it took through the various banks was shown on the instrument. Mr. Quattlebaum's testimony as to that was mainly explanatory of the manner of handling of checks by banks. There was no prejudicial error, therefore, on the ground that this evidence was "hearsay."

The complaint, it is true, did not directly allege the two presentations of the check, but we agree with the Circuit Judge that the testimony as to the first presentation was, nevertheless, competent. In paragraph 11 of the complaint, the respondent charged that the appellant was negligent and willful "in presenting said check before the same was due and in having the same turned down and marked 'not sufficient funds.' " The allegations of the complaint were broad enough to admit the evidence complained of.

The judgment of this Court is that all the exceptions be overruled, and that the judgment below be affirmed.

Mr. Chief Justice Watts, and Mr. Justice Stabler concur.

Mr. Justice Carter concurs in result.

Mr. Justice Cothran dissents.

MR. JUSTICE COTHRAN (dissenting): I think that it is very clear that if the plaintiff had any cause of action against the defendant, it would have been based upon the two facts: (1) That the alteration of the check from September 1st to August 1st was made *before* the check in the first instance was presented to the Bishopville bank for payment; and (2) that the Bishopville bank treated it as a check dated August 1st, in turning it down and reporting to the various banks through which it had passed, that the plaintiff did not at that time have on deposit a sufficient amount to meet it.

If those had been facts, undisputed, *and the plaintiff had, in his complaint, counted upon them,* I am inclined to think that there would thereby have been such a reflection upon his business methods as to have injured his credit and to have entitled him to "substantial but temperate" damages.

The evidence in the case and the argument of counsel for the plaintiff both unequivocally show that this was the theory upon which the plaintiff proceeded, and it must be conceded that there was sufficient evidence to justify a submission of the issue to the jury if the complaint had been based upon it. The fact that the Bishopville bank, upon the first presentation of the check for payment, returned it to its correspondent with the notation "N. S. F." (not sufficient funds), is strongly suggestive that at that time the alteration had been made; otherwise, if it had borne the original date of September 1st, it would have been returned as having been prematurely presented in August. Counsel for the plaintiff was particularly careful to elicit the fact that, on the check's return through the several banks, it bore that notation.

The complaint, however, very distinctly shows that the cause of action was based upon the circumstances connected with the last presentation of the check for payment when it was transmitted by the defendant directly to the Bishopville bank in the latter part of August, and paid on the 31st with funds deposited by the plaintiff after he had been noti-

fied, and after the plaintiff communicated to the bank the fact that the date had been altered.

It is apparent from a reading of the complaint that there is no reference to the transactions in which the check was forwarded through the several banks, finally reached the Bishopville bank, was marked "N. S. F.," and returned to the correspondent bank with that notation. The allegation is that after it was later sent directly to the Bishopville bank, it was returned with the annotation "N. S. F.," presumably to the defendant who had sent it to the Bishopville bank.

The cashier testified that he received the check at the end of its first voyage, about the 11th. So that manifestly the plaintiff is relying upon what happened after that time and as a consequence of the treatment of the check by the Bishopville bank, which it is shown could not possibly have injured the plaintiff, as the bank then did not turn it down but held it until it was paid.

The objection that the evidence does not support the cause of action alleged in the complaint, I think is sufficiently presented by the defendant's 12th exception.

But assuming that the complaint counts upon the cause of action which the evidence tends to sustain, I think that the Circuit Judge was in error in charging that the premature presentment of a post-dated check constituted a reflection upon the credit of the drawer. It is held in 2nd Morse on Banking (6th Ed.), Sec. 456, 8 C. J., 106, that a postdated check is the same thing as a bank draft, payable on demand at or after the date of its date; it is subject to acceptance by the bank, and if certified is equivalent to a deposit of money; it is possible that a postdated check may be presented for such purpose and if the bank should decline to pay or to accept or to certify, relying upon its right to withhold payment until the maturity of the check, I do not see how the drawer of the check could in anywise be injured thereby. Unquestionably the payee of a postdated check has the *right* to pre-

sent it before maturity; if so, there can result no actionable wrong from that fact alone.

While, as I have stated, the evidence that the alteration was made before the check was placed with the Columbia bank, in the first instance, for collection, is persuasive, it was not a conceded fact in the case, and there is no direct evidence to that effect from any officer of the Bishopville bank.

The effect of the charge was to render that issue of no consequence; it justified the jury in finding for the plaintiff in either event. If the check was altered between the date of its first transmission and return and the last direct transmission to the Bishopville bank, the premature presentation could not *per se* have been an actionable wrong or a wrong at all.

The judgment below, in my opinion, should be reversed.