## 14096

WELCH v. MISSOURI STATE LIFE INSURANCE CO. *ET AL.*

(180 S. E., 447)

*Messrs. Thomas, Lumpkin & Cain* and *Nath. B. Barnwell,* for appellants,

*Mr. J. C. Long,* for respondent,

June 17, 1935.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

This action was commenced in the Court of Common Pleas for Charleston County by the plaintiff against the defendant on October 8, 1932, for the recovery of $3,000.00 damages, actual and punitive, for the alleged wrongful and fraudulent breach of a life insurance policy, No. 823385, in the face amount of $1,000.00, issued to the plaintiff by the defendant on November 17, 1930, and for its alleged wrongful refusal to reinstate the same.

The defendant denied the material allegations of the complaint, and alleged that the policy had become lapsed for nonpayment of the premium extension agreement entered into between the parties and maturing June 17, 1932; and that the application for the reinstatement of the policy contract was declined because the condition of plaintiff's health had rendered him uninsurable since the date of the lapse, under

defendant's rules and regulations pertaining to underwriting. It specifically denied that the lapse of the policy or the declination of the application for reinstatement was due to any wrongful, fraudulent, or malicious act on its part, but on the contrary alleged that the termination of the contract of insurance was due to the failure of the insured to pay the extension agreement referred to. After the commencement of the action, the General American Life Insurance Company offered to substitute itself as a party defendant to the suit, but the plaintiff would not agree to the dismissal of the Missouri State Life Insurance Company as a party. Thereupon, the General American Life Insurance Company was joined as a party defendant; it having assumed the obligation to pay death losses maturing under policies issued by the Missouri State Life Insurance Company.

The case was heard at the spring, 1934, term of Court, before Judge Arthur L. Gaston and a jury, and resulted in a verdict in favor of the plaintiff for the sum of $625.00 actual damages, and $375.00 punitive damages.

At the proper stage of the trial, the defendant made a motion for a nonsuit, which motion was refused; and when all the testimony had been completed the defendant made a motion for the direction of a verdict upon the grounds that the testimony was susceptible of only one inference; that being that the policy had lapsed for nonpayment of the premium extension agreement maturing June 17, 1932; and that the defendant had not been guilty of any wrongful, fraudulent, or malicious act, either in connection with the lapse of said policy, or the refusal to reinstate same. This motion was denied. A motion for a new trial was also denied.

The testimony of the plaintiff, most of which is admitted, tends to prove the following facts:

On November 17, 1930, the defendant issued two policies of insurance upon the life of the plaintiff, numbered 823385 and 823386, in the face amount of $1,000.00 each. The an-

nual premium on each policy was $43.10. This action involves only one policy, that numbered 823385, and consequently all references hereafter made are to the policy bearing this number, and not to policy numbered 823386; this latter policy having been brought into the case solely for the purpose of establishing an alleged course of dealing between the plaintiff and the defendant with reference to the payment of premiums.

The first annual premium was paid in cash by the plaintiff to the defendant upon the delivery of the policy, that is, on November 17, 1930. When the second annual premium became due, on November 17, 1931, plaintiff settled it by the payment of $6.10 in cash, and by the execution and delivery of an extension agreement for $37.00, to become due and payable March 17, 1932.

When this extension agreement became due on March 17, 1932, being unable to pay same all in cash, the plaintiff paid $6.00 in cash, and executed and delivered to the defendant another premium extension agreement in the amount of $31.00, to mature June 17, 1932. The total cash thus paid by the plaintiff, amounting to $12.10, plus the amount represented by the extension agreement, aggregated $43.10, the full amount of the annual premium.

The controversy in this case centers around the alleged failure of the plaintiff to pay the premium extension note maturing June 17, 1932; the alleged fraudulent act of the defendant in declaring the policy lapsed as of that date; and its refusal to reinstate the same.

The plaintiff testified that for a period of about 14 years he had held various policies issued to him by the defendant, and that a course of conduct had been established between them with reference to the payment of premiums, in consequence of which the defendant did not insist upon prompt payment; that frequently the company received and accepted from him in connection with the payment of premiums on these various policies premium extension notes, with post-

dated checks, payable beyond the due date of the extension agreements; that he relied on this practice of indulgence extended to him by the defendant; and that this custom was followed by him and the defendant with reference to the payment of the premium extension notes in connection with policy No. 823385.

As confirmation of this practice by the defendant, he offered in evidence a letter written to him on March 25, 1932, from Columbia, by Mr. Marion Rich, general agent in this State of the defendant:

"March 25, 1932.

"Mr. Silas S. Welch, Adams Run, S. C.

"Policies No. 823385-6—Welch

"Dear Mr. Welch: We are in receipt of a letter from the Home Office advising that the check of $13.48, post-dated April 1, 1932, had been received together with properly signed extension agreements dated to mature June 17, 1932, which represents settlement covering balance of the annual premiums due November 17, 1931, on the above policies.

"Although the check is dated beyond the extension agreements due March 17, 1932, a special extension of time is being granted to April 1, at which time the check will be presented for payment.

"With best wishes, I am,

"Yours faithfully,

"MR :LS                    "Marion Rich, General Agent."

It will be noted that this letter is dated eight days after the maturity date of the March 17th extension agreement, and that the check therein referred to was postdated to April 1st.

Plaintiff further testified that about a month prior to June 17, 1932, the defendant mailed to him two premium extension agreements, one relating to each policy, so drawn as to mature August 17, 1932, but that he refused to sign and return these extension agreements or send the small cash payment provided, for the reason that they contained the recital,

"that although no part of the annual premium due on the seventeenth day of November, 1931, on Policy No. 823385 had been paid," etc.; his contention being that he had actually paid a part of this annual premium, to wit, $6.10, which was forwarded to the company along with the premium extension agreement maturing March 17, 1932, and had forwarded the sum of $6.00 in connection with the premium extension agreement maturing June 17, 1932.

Feeling assured that the recital was incorrect, he testified that he wrote a letter to the defendant's general agent at Columbia, prior to June 17, and in time to have received a reply before said date, requesting another premium extension agreement, with correct recital as to the amount he had already paid.

It is admitted, or not denied, that the plaintiff was in ill health for two or three weeks prior to June 17, 1932, and on June 20th he was admitted to a hospital in Charleston. On the following day, June 21st, he underwent a serious operation for the removal of stones from his kidneys. He remained in the hospital for four weeks, and was confined to his home for an additional period of six weeks thereafter.

He also testified that prior to his admission to the hospital he was daily expecting the corrected premium extension notes, but did not receive them.

On June 18th, 1932, the plaintiff received the following letter from the company:

"June 18, 1932.

"Mr. Silas S. Welch, Adams Run, S. C.
"Policy No. 823385-6—Welch

"Dear Mr. Welch: In accordance with your request, we are enclosing notes, in connection with the above policies, for $27.00 each, due September 17, 1932, *in connection with the extension notes due June 17, 1932* (Italics ours).

"The enclosed notes should be signed by yourself and returned to this office by return mail, together with a remit-

tance of $4.47, on each of the policies mentioned above. Assuring you of our appreciation of your past patronage, I am,

"Yours very truly,

"Marion Rich, General Agent.

"MR: TA

"Inclosures."

This letter, written one day after the maturity date of the premium extension agreement, clearly shows that the defendant was willing to waive, and did waive, the prompt payment of the amount therein referred to. It was also an acknowledgment that the defendant had actually received a "request" from the plaintiff; and, further, that the company continued to recognize the validity of Policy No. 823-385. This letter also strongly tends to verify plaintiff's contention as to the course of conduct followed by the defendant in not insisting upon prompt payment of premiums.

Thereafter, he received a letter from the defendant, bearing date June 22, 1932, written four days after the letter of June 18, 1932, advising him that his policy had become lapsed, and requesting him to sign and return the extension notes, along with the application for reinstatement which was inclosed, so that the reinstatement of his policy might be considered. This letter was the first intimation given to the plaintiff by the defendant that his policy had been declared lapsed.

After his return home from the hospital, the plaintiff, on July 24, 1932, signed and returned to the defendant the two premium extension notes referred to in the letter of June 18th, maturing September 17, 1932, and along with them mailed a certified check for the amounts therein mentioned, and inclosed the executed application for reinstatement of his policy which was contained in the letter of June 22d.

The plaintiff was advised about one month later by the defendant that it declined to reinstate his policy, and refunded his remittance. Thereafter, on September 3, 1932,

the plaintiff, in a further effort to reinstate his policy, sent his certified check for the full balance of the annual premium to the defendant, which the defendant returned on September 19, 1932, with the statement that the company regretted that it was impossible to reinstate the policy, because at the time it was declared lapsed there was no equity in it, and consequently was of no further value.

We find the following principles of law stated in 32 Corpus Juris, at page 1347: "A forfeiture for nonpayment of premium is not favored in the law, and the courts are prompt to seize upon circumstances which indicate an election to waive the forfeiture. So the company cannot insist upon a provision of forfeiture upon nonpayment of premiums when due when its course of dealing has been such as to induce the belief in insured that the condition will not be insisted upon, as where it has been its custom to receive premiums after they are due."

We think this a correct statement of a salutary principle of law, and applicable here.

Upon a consideration of plaintiff's evidence in this case, we are convinced that the trial Judge committed no error in overruling the defendant's motion for a nonsuit.

However, we think from a careful study of the whole record, that the motion made by the defendant for a directed verdict as to punitive damages should have been granted.

We quote from the case of *Williams v. Metropolitan Life Insurance Company*, 173 S. C., 448, 176 S. E., 340, 345:

"Punitive damages are not recoverable for a mere breach of contract. To recover damages of that character, the plaintiff must show that the breach was accomplished with a fraudulent intention, and was accompanied by a fraudulent act. *Welborn v. Dixon,* 70 S. C., 108, 49 S. E., 232, 3 Ann. Cas., 407; *Holland v. Spartanburg Herald-Journal Co.,* 166 S. C., 454, 165 S. E., 203, 84 A. L. R., 1336; *Derrick v. In-*

*surance Co.,* 167 S. C., 434, 166 S. E., 502, and many other cases too numerous to be cited.

"Acts of willfulness, accompanying the breach of a contract, unless there is fraud also, will not support a claim for punitive damages. *Holland case, supra.*

"The mere violation of a contract is not sufficient to support an allegation of fráud. *Holland case, supra; Caldwell v. Duncan,* 87 S. C., 331, 69 S. E., 660; *Coleman v. Stevens,* 124 S. C., 8, 117 S. E., 305."

There is no evidence in the record from which a reasonable inference can be drawn that the defendant knew of the plaintiff's illness or his physical incapacity at the time the policy was declared to be lapsed.

The plaintiff alleges that the lapsing of the policy by the defendant was a part of a fraudulent, wicked, and malicious attempt on its part to evade its liability on plaintiff's policy of insurance; but the only evidence along this line is this: The plaintiff testified that at some time in May he requested new or additional premium extension notes because of errors in the blanks sent before, and that although he daily expected the receipt of these agreements, they did not arrive until after he was admitted to the hospital. He states that his request was mailed to the general agent in Columbia in sufficient time for these agreements to have reached him before he entered the hospital on the 20th, but he does not give the date of his letter to the Columbia agency. It is to be noted that although the plaintiff anticipated at the time he made this request that he would soon enter the hospital for an operation, yet there is no testimony that he made any such statement in this letter addressed to the defendant in which he requested the additional premium extension agreements.

The plaintiff also testified that at some time in May he told Mr. Voight, the local agent in Charleston of the defendant, that he anticipated entering the hospital for an operation, but that at that time he did not know the operation

would involve the removal of kidney stones. His sole reason for mentioning this to Mr. Voight was in connection with making an inquiry as to the defendant's liability on a health and accident insurance policy issued by the defendant to him in August, 1931, and he spoke to Mr. Voight about it because he was the agent who solicited this insurance policy in addition to the two policies mentioned in this record. In his testimony Mr. Voight denied any recollection of this conversation.

It is upon this testimony, and the testimony with reference to the alleged incorrect premium extension agreements, that the plaintiff mainly bases his charge that the defendant fraudulently schemed to prevent him from paying the premium when due.

If the defendant ever harbored any such fraudulent design, then its letter of June 18th is completely out of character. This letter, written the very next day after the plaintiff had defaulted in paying the premium extension note, unquestionably negatives any such theory. Under the principles of law above quoted, we are unable to perceive anything in the record upon which to base punitive damages. The company undoubtedly breached its contract with the plaintiff wrongfully, but such breach was not accomplished or accompanied by any fraudulent act.

With regard to the alleged fraudulent refusal of the defendant to reinstate, the position taken by the respondent cannot be sustained. *Jordan v. Equitable Life Assurance Society,* 170 S. C., 19, 169 S. E., 673.

All of the appellant's exceptions, although not discussed seriatim, have been fully considered and passed upon.

The judgment of this Court is that the judgment as to actual damages be affirmed; that the judgment as to punitive damages be set aside, with directions that a verdict in favor of the defendant be entered up as to that issue.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES CARTER, BONHAM and BAKER concur.