14474

BROOME v. TRAVELERS INSURANCE CO.

(191 S. E., 220)

March, 1936.

*Messrs. Osborne & Butler* and *Hemphill & Hemphill*, for appellant,

*Messrs. Hamilton, Gaston & Hamilton,* for respondents,

May 3, 1937.

The opinion of the Court was delivered by MR. CHIEF JUSTICE STABLER.

This is an action for the alleged fraudulent breach of a contract of insurance. It appears that on June 22, 1927, the defendant insured the life of the plaintiff under a group

policy theretofore issued by it to the Highland Park Manufacturing Company, of which the plaintiff was an employee. The individual certificate furnished her by the defendant fixed the amount of her insurance at $1,000.00. Both the policy and the certificate provided that the insurer would waive, upon being furnished due proof of total permanent disability of the insured, further payment of premiums and would pay to her the amount of insurance then in force on her life in a fixed number of installments of her own choosing.

The complaint originally contained two causes of action, so denominated. It was sought by the first to recover actual damages in the sum of $1,000.00 alleged to be due the plaintiff as disability benefits. The second was for the fraudulent breach of contract, for which damages were asked in the sum of $2,000.00. On the call of the case, the defendant moved that the plaintiff be required to elect on which cause of action she would proceed, and her counsel thereupon stated that she would go to trial on the second—for the fraudulent breach of contract. The plaintiff was then permitted, on motion, to amend that cause of action by alleging that she had been injured and damaged in the sum of $1,-000.00 actual damages and $2,000.00 punitive damages, and to change her prayer to conform to these allegations.

It was alleged that, in the summer of 1931, while the policy and the certificate of insurance were in full force and effect, the plaintiff became, and has been ever since, permanently and totally disabled, suffering with "a general physical weakness, low blood pressure, weakness of the heart, a chronic ulcerated stomach, and curvature of the spine"; that, at the time of the commencement of her disability, she notified the defendant's agents of her condition and demanded payment of the amount due her, but that the company fraudulently refused to furnish her blanks on which to make claim for disability benefits; that it represented to her that, if she would continue to pay her premiums until her employer opened up

its mill, which was then shut down, her claim would be paid, and that it thereby fraudulently presuaded her to pay the premiums until October 29, 1931, after which time it refused to accept further payments; and that the company, knowing of her disability, unlawfully canceled and repudiated the insurance contract, basing its action upon the claim that the premiums were not paid, although it knew that the payment of premiums, under the terms of the policy and the certificate, was waived by it from and after the commencement of plaintiff's disability.

The defendant, answering, admitted the issuance of the group policy of insurance and of plaintiff's individual certificate thereunder, but alleged that on November 2, 1931, the Highland Park Manufacturing Company failed to pay the premium then due, and that both the policy and the certificate, for that reason, had lapsed as of that date. A general denial was interposed to other allegations of the complaint.

During the trial, Judge Oxner, upon motion of the defendant, granted a nonsuit as to punitive damages, but refused to do so as to actual damages. A motion for a directed verdict was overruled and the jury found for the plaintiff $1,000.00. From judgment entered this appeal is taken.

While the exceptions are thirteen in number, they raise but three questions, as stated and argued by counsel for the appellant:

"(1) Could the plaintiff recover actual damages for total and permanent disability when she had elected to proceed under the second cause of action for fraud, when no fraud was proven?

"(2) Did the proof show that the plaintiff was totally and permanently disabled under the terms of the policy involved and the decisions of this Court?

"(3) Could the plaintiff recover in the absence of a showing that she had furnished proofs of her alleged disability while the policy was still in force?"

First. Judge Oxner, in overruling the motion for a directed verdict as to actual damages, said: "The contention of the defendant is, in substance, that an action for fraudulent breach of contract is the same as one for fraud and deceit. I do not think the two are the same by any means. It is true that it has recently been held by the Supreme Court that an action for alleged fraudulent breach of contract is one *ex delicto; but,* as above stated, it doesn't follow from this holding that, in an action for fraudulent breach of contract, that if the plaintiff fails to prove fraud, then his cause of action for actual damages goes out. Unquestionably, this is true, because in several of the recent cases that have gone up to the Supreme Court, where the Supreme Court found that there was no evidence of fraud to warrant a verdict for punitive damages, the verdict was allowed to stand as to actual damages. A very recent decision is that of *Welch v. Missouri State Life Insurance Company,* 176 S. C., 494, 180 S. E., 447. In the *Welch case,* if the contention of the defendant here is correct, when the Court found that there was no evidence of fraud, it would have been necessary for the Court to have reversed the entire judgment below."

The argument of appellant here is simply this: In an action for the fraudulent breach of contract accompanied by a fraudulent act, "if a plaintiff proves a fraud, he can get both actual and punitive damages, but if he does not prove fraud, he not only cannot recover punitive damages but he cannot recover actual damages since the recovery of both depends upon the establishment of his proof that he has been defrauded." In their consideration of this question, counsel for the appellant have devoted a large part of their brief—which shows much study and investigation—to a discussion of numerous decisions of this Court, from which, as pointed out, certain principles seem clear. While these decisions are authority for what they hold, it is not claimed that they are decisive of the question here presented. We cite a few of these cases: *Welborn v. Dixon,* 70 S. C., 108, 49 S. E., 232,

3 Ann. Cas., 407; *Prince v. State Mutual Life Insurance Company,* 77 S. C., 187, 57 S. E., 766; *Givens v. North Augusta Electric & Improvement Company,* 91 S. C., 417, 74 S. E., 1067; *Winthrop v. Allen,* 116 S. C., 388, 108 S. E., 153; *Sullivan v. Calhoun,* 117 S. C., 137, 108 S. E., 189; *St. Charles Mercantile Company v. Armour & Co.,* 156 S. C., 397, 153 S. E., 473; *Spratt Building & Loan Ass'n v. Roper,* 160 S. C., 240, 158 S. E., 495; *Bradley v. Metropolitan Life Insurance Co.,* 162 S. C., 303, 160 S. E., 721; *Holland v. Spartanburg Herald-Journal Co.,* 166 S. C., 454, 165 S. E., 203, 84 A. L. R., 1336; *Lawson v. Metropolitan Life Insurance Co.,* 169 S. C., 540, 169 S. E., 430.

It is true that, in *Dyson v. Commonwealth Life Insurance Company,* 176 S. C., 411, 180 S. E., 475, 476, we approved the holding of the trial Judge "that a fraudulent breach of a contract is a tort." Whether such holding is in conflict with expressions used by the Court in some of its prior decisions, is not here important. We have held in several recent cases of the kind before us, where the question here raised was indirectly involved, that acutal damages are recoverable, although the recovery of punitive damages, as no fraud was proved, was not allowed.

In *Jordan v. Equitable Life Assurance Society,* 170 S. C., 19, 169 S. E., 673, which was an action for the fraudulent breach of contract accompanied by fraudulent acts, a motion was made by the defendant, on trial of the case, for a directed verdict upon the ground that the policy had lapsed for the failure to pay the premiums. The motion was refused and both actual and punitive damages were awarded. This Court held that there should have been a directed verdict as to punitive damages, but that actual damages, under the proof, was a question for the jury. *Welch v. Missouri State Life Insurance Company,* 176 S. C., 494, 180 S. E., 447, decided subsequently to the *Dyson case,* was also an action for the fraudulent breach of contract accompanied by fraudulent acts. The defendant's motion for a directed verdict was re-

fused and the jury found for the plaintiff both actual and punitive damages. On appeal, this Court held that a verdict as to punitive damages should have been directed, but it sustained the judgment for actual damages. *Pack v. Metropolitan Life Insurance Company,* 178 S. C., 272, 182 S. E., 747, 749, a still later decision, was an action for the fraudulent breach of contract. The trial Judge refused the defendant's motion for a directed verdict, and both actual and punitive damages were awarded by the jury. On appeal this Court held:

"The evidence fails to show the alleged 'fraudulent breach of contract accompanied by a fraudulent act.'

"It may show a negligent breach of the contract because of inadequate efforts of defendant's agent to ascertain the changed residence of the plaintiff, and to collect the premiums. That would·be simple negligence, the proof of which would entitle the plaintiff to recover actual damages."

Clearly, under these decisions, question (1) must be answered in the affirmative. Judge Oxner, therefore, committed no error in refusing to grant defendant's motion for a directed verdict on this ground.

Second. A lengthy review of the evidence pertinent to this issue would serve no useful purpose. We are satisfied, from a careful reading of the testimony, that the trial Judge properly submitted to the jury the question of the insured's total and permanent disability as alleged in the complaint. The plaintiff testified that she was in ill health for some time prior to the year 1931, suffering with severe pains in her back and stomach, and during the summer of that year her condition became so bad that she was no longer able, even with the help of her sister, to do the work of a spooler in the cotton mill where she was employed, which was the work she had been trained to do and upon which she depended for a living. Dr. Walker stated that he had treated the insured in the summer and fall of 1931 and prior thereto; that he found she had curvature of the spine, which

appeared to be growing worse; that she complained of pain in the chest, which was probably due to an ulcer of the stomach or some condition of the spine; that she was unable to work in June, 1931, as he told her at the time, and that her condition had not improved since, and that she will never get well. Dr. Ross testified that he examined the plaintiff in 1933, and that he also saw her in 1934 and in 1935; that his examination of her disclosed that she had a bad curvature of the spine, that her heart was very weak and slightly dilated, and that she also had low blood pressure; that she complained of intense pain in her chest, which was probably due to an ulcer of the stomach; that when he examined her in 1933 she was not able, in his opinion, to work as a spooler in a cotton mill, and that she will never be able to do so. There was some testimony to the effect that in 1933 the plaintiff worked as a spooler for several months, but she stated that she was out the biggest part of the time, and that she finally had to quit for the reason that she was not able to work at all. See *Smith v. Prudential Insurance Co.*, 174 S. C., 528, 178 S. E., 124; *Thompson v. Aetna Life Insurance Co.*, 177 S. C., 120, 180 S. E., 880, 885. The exceptions raising this question are overruled.

Third. It appears from the record that the issue, as to the failure of the plaintiff to furnish proofs of her disability, is not raised by the pleadings. The complaint alleged that the insured requested the insurer to furnish her blanks with which to make written claim for the disability benefits to which she was entitled under the policy, but that, acting through its agents, the company refused to do so. This allegation was denied by the defendant's answer.

In *Carpenter v. American Accident Co.*, 46 S. C., 541, 24 S. E., 500, the Court held that "the forfeiture claimed by reason of the alleged failure to file sworn proofs of death is purely a matter of defense"; and in *Thompson v. Ætna Life Insurance Co., supra,* that "such a forfeiture is an affirma-

tive defense, to be proved by defendant"—citing cases. In *Pickett v. Fidelity & Casualty Co.*, 60 S. C., 477, 38 S. E., 160, 163, 629, where it was alleged by the plaintiff, but denied by the defendant in its answer, that all the conditions of the policy had been performed, this Court said: "Such a denial does not require a plaintiff in a suit on an insurance policy to prove compliance with the conditions in reference to fortfeiture as a part of the plaintiff's case. It is incumbent on the insurer, when sued, to specifically allege any matter of forfeiture relied on. *Copeland v. Western Assurance Co.*, 43 S. C., 26, 20 S. E., 754."

In the case at bar, the ruling of the trial Judge on this question, under the authorities above cited, was undoubtedly correct.

The judgment of the Circuit Court is affirmed.

MESSRS. JUSTICES CARTER, BONHAM, BAKER and FISHBURNE concur.