## KREBS v. SECURITY TRUST & LIFE INS. CO.

(Circuit Court, D. Oregon. October 12, 1907.)

No. 3,032.

1. INSURANCE—FORFEITURE OF POLICY—PAYMENT OF PREMIUMS.

Where premiums on a life insurance policy, due on a specified date each year, were customarily paid by the insured by depositing a draft in the post office on that date addressed to an agent of the company, which was received and retained without objection, such custom constituted a prac-

tical construction of the contract or a waiver of strict compliance with its terms, which precludes the company from asserting a forfeiture of the policy for nonpayment of a subsequent premium which was deposited in the same way.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 28, Insurance, § 1057.]

2. SAME—REPUDIATION OF CONTRACT BY INSURER—MEASURE OF DAMAGES.

Where a life insurance company has wrongfully repudiated a policy, if the holder is in a state of health to enable him to procure other insurance of like nature and kind, his measure of damages is the difference between carrying the insurance which he has and the cost of new insurance for the same amount and term, with the addition, in case his policy has an investment feature or entitles him to accumulations and profits, of all such profits or accumulations.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 28, Insurance, § 515.]

At Law. On demurrer to complaint and motion to strike out paragraph.

This is an action for the recovery of damages alleged to have been sustained by plaintiff through the refusal on the part of defendant to accept further payments of premium on a life insurance policy issued to the plaintiff, or to further recognize such policy as still of binding force and effect. The policy was issued March 14, 1899, in consideration of the sum of $313, and an annual premium of a like amount to be paid on the 15th day of March of each year thereafter for 19 years, and conditioned for the payment of the sum of $10,000, with certain accumulations and dividends, on the death of plaintiff, to Conrad Krebs, her husband.

Plaintiff paid six annual premiums, and defendant refused to receive the seventh. By the fourth and fifth paragraphs of the complaint it is alleged:

"That the defendant directed this plaintiff to pay the said annual premium so due by the provisions of said policy to one Charles B. Soule, who was manager for said defendant having his office at the city of Chicago, in the state of Illinois, and all the foregoing payments so made to the defendant by plaintiff were made to the said Soule, as manager of the defendant at Chicago, and the said defendant issued receipts to the plaintiff for such payments by and through the said Soule, and on the 15th day of March, 1905, plaintiff, in accordance with the usual custom of dealing with defendant in regard to the payment of said premium, mailed to the said Charles B. Soule, to his address in the city of Chicago, Ill., a certified check, payable to the order of said defendant company, for said sum of $313, and deposited the same in the United States post office at Salem, Or., directed to the said Charles B. Soule, as aforesaid.

"That shortly thereafter the said check, and the said letter containing said check, was returned to the plaintiff unopened, whereupon plaintiff immediately remailed said check to the defendant itself at its office in the city of Philadelphia, Pa.; but, despite the fact that plaintiff was willing and anxious to pay said annual premium, and that said check was payable to said defendant company and was mailed on the date the same was due to said Charles B. Soule, as plaintiff had theretofore done when paying said premium, and despite the fact that defendant received said check and knew all said facts, it wrongfully refused to accept said payment or said check, and returned the same to the plaintiff with a notification that her policy had lapsed, and wrongfully refused further to be bound thereby, for the alleged reason that said Soule, to whom said check was sent, was no longer its agent; but plaintiff alleges that if such was the fact the defendant wholly failed to notify her of any such change of agency."

By the seventh paragraph it is further alleged, in effect, that defendant has always retained, and now wrongfully retains, each and all of the annual premiums paid to it by plaintiff, to her damage in the sum of $2,365.50, being the sum of six annual premiums, of $313 each, paid as aforesaid, with interest on such payments from date thereof at 6 per cent. per annum.

Defendant interposed a motion to strike out this last paragraph, but at the

argument the question was submitted also, as if upon demurrer, whether the complaint states facts sufficient to constitute a cause of action.

Carson & Cannon, for plaintiff.
Chamberlain & Thomas, for defendant.

WOLVERTON, District Judge (after stating the facts as above). Upon the question whether the complaint states facts, it is submitted that, since the complaint shows that the payments of premium were to be made in Chicago, Ill., and there being no allegation that premiums were receivable by mail, it was incumbent upon plaintiff to have the check in Chicago on or before March 15th, the day upon which the premium was made payable by the terms of the policy, and that it was not sufficient to constitute payment at the time required that the premium was placed in the post office at Salem, Or., addressed to the defendant's manager at Chicago, on that date.

Answering the objection, I am of the opinion, however, that, having alleged that defendant directed plaintiff to pay the premiums to Soule, the manager of defendant at Chicago, to whom all foregoing payments had been made, and having further alleged that, in accordance with the usual custom of dealing with defendant in regard to the payment of such premiums, plaintiff mailed to Soule at Chicago, by certified check, the premium, by depositing it in the post office at Salem, Or., on March 15th, the complaint is sufficient to show payment to the company on that date. These allegations are sufficient to show that, by a course of dealing between the plaintiff and the insurance company with reference to the payment and receipt of the annual premiums, such premiums were not only payable to Soule at Chicago, as recognized by the company, but payable through the post office, thus effecting a waiver of strict payment to the company, in person, at its home office, on or before the very day on which the premium fell due. When payment by mail was authorized or recognized by the company, and there do not appear to be any restrictions that the money shall be at the company's office on or before the date when due, a deposit in the post office, even at a distant point, on the due date, will fulfill the requirements, for in such a case a deposit in the post office is at the risk of the creditor, and payment is deemed to have been made at the time of the deposit. Primeau v. National Life Association, 77 Hun (N. Y.) 418, 28 N. Y. Supp. 794. Forfeiture is a harsh remedy. The courts abhor it, and will not enforce it unless by the very letter, so that whenever the parties have dealt with reference to a stipulation for a forfeiture as if it would not be literally insisted upon, the courts are quick to take them at their word and relieve against the strictness of fulfillment, so as to accord justice more fitting the transaction. In consonance, therefore, with this principle, I hold, under the complaint, that plaintiff has not forfeited her previous payments, but, rather, that defendant has, by its conduct and mode of dealing with plaintiff, recognized payment by deposit in the post office as sufficient. See, further, as to this subject, Braswell v. American Life Insurance Co., 75 N. C. 8; Protection Life Insurance Co. v. Foote, 79 Ill. 361. The demurrer will be overruled.

The motion presents a question not so easily solved, which is whether

the paragraph moved against states the proper measure of damages to which plaintiff is entitled should she prevail in her action.

There is a sharp and irreconcilable conflict of authorities touching this subject. I need only to state the prevailing rules, and to note the one by which I feel bound. On the one hand, it is held that where the insurance company wrongfully revokes its policy, and refuses further to be bound by it, the holder may elect whether to enforce the contract or to treat it as rescinded. If he elects to pursue the latter course, his measure of relief is the amount of premiums paid, with interest, and this though he has had the benefit of insurance under the policy from its inception to the time of revocation, and even though such revocation would not operate in law to avoid the policy. This rule is said, by the learned authors of the American and English Encyclopedia (volume 19, p. 99) to be supported by the weight of authority. See, also, Van Werden v. Equitable Life Assurance Society, 99 Iowa, 621, 68 N. W. 892; American Life Insurance Co. v. McAden, 109 Pa. 399, 1 Atl. 256; Alabama Gold Life Ins. Co. v. Garmany, 74 Ga. 51; McKee v. Phœnix Insurance Co., 28 Mo. 383, 75 Am. Dec. 129; McCall v. Phœnix Mutual Life Ins. Co., 9 W. Va. 237, 27 Am. Rep. 558; Frain v. Metropolitan Life Ins. Co., 67 Mich. 527, 35 N. W. 108; Ætna Life Insurance Co. v. Paul, 10 Ill. App. 431; Braswell v. American Life Insurance Co., 75 N. C. 8.

On the other hand, it is held by many authorities that, if the assured is in a state of health that he can secure other insurance of like nature and kind, his measure of damages is the difference between the cost of carrying the insurance which he has, for the term stipulated for, and the cost of new insurance at the rate he would then be required to pay for a like term. If, however, he is unable to obtain other insurance, then his measure of damages will be the present value of his policy as of the date of death, less the estimated cost of carrying the same, from the date of cancellation, at his then age. Ebert v. Mutual Reserve Fund Life Ass'n, 81 Minn. 116, 83 N. W. 506, 834, 84 N. W. 457; Speer v. Phœnix Mutual Life Ins. Co., 36 Hun (N. Y.) 322; Brooklyn Life Ins. Co. v. Weck, 9 Ill. App. 358; Day v. Conn. General Life Ins. Co., 45 Conn. 480, 29 Am. Rep. 693; Universal Life Ins. Co. v. Binford et al., 76 Va. 103; Continental Life Ins. Co. v. Houser, 89 Ind. 258; New York Life Ins. Co. v. Statham et al., 93 U. S. 24, 23 L. Ed. 789; Smith et al. v. Charter Oak Life Ins. Co., 64 Mo. 330; Lovell v. St. Louis Mutual Life Ins. Co., 111 U. S. 264, 4 Sup. Ct. 390, 28 L. Ed. 423.

None of these cases seem to have made any distinction between a policy of insurance that provides for insurance alone and one that provides for such insurance with an investment feature added, or when the assured is entitled also to accumulations and profits. A case has come to my notice from West Virginia (Abell v. Penn Mutual Life Ins. Co., 18 W. Va. 400), where this distinction is discussed very intelligently and ably, and the measure of damages is there stated. In such a case the company can only claim payment for the actual risk it has run, and cannot rightfully claim to be paid anything as profits on the policy. The company must therefore, when it is at fault, surrender the entire

profits of the insurance contract, and be content to retain only what will compensate it for the risk it has run. It would follow, then, that the measure of damages in such a case would be increased by the amount of profits to which the assured would be entitled, none of which the company could claim, because it has rendered no just consideration therefor to the assured.

Unaccompanied by the feature discussed in the West Virginia case, I am constrained to adopt the latter of the two rules indicating the measure of damages to which the assured is entitled, because it has the sanction of the Supreme Court of the United States. However, as the present policy, as appears from the complaint, has the accumulation feature added, it seems to me, and I so hold, that the measure of damages should be in accordance with the West Virginia doctrine.

The plaintiff has not stated whether she is able or not to procure other insurance upon her life; but, on the presumption that things remain as we find them unless facts are shown indicating a contrary or different condition, I have assumed that other insurance could be had. In view of these considerations, the motion to strike out should be sustained.

The order will be, therefore, that the demurrer to the complaint be overruled, and the motion to strike out sustained.