13644

JORDAN v. EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES

(169 S. E., 673)

20

*Messrs. Thomas, Lumpkin & Cain,* and *McDonald, Macaulay & McDonald,* for appellants,

*Messrs. Gaston, Hamilton & Gaston,* for respondent,

June 1, 1933.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

On January 20, 1919, the defendant company insured plaintiff's life in the sum of $5,000.00.

The policy contained double indemnity accident and total and permanent disability provisions, and provided for the payment of the premium semi-annually on January 14 and July 14 of each year, with a grace period of 31 days. In 1923 the insured became ill with pulmonary tuberculosis, and was paid total and permanent disability benefits for a period of six months; the payments being discontinued on his return to work. The semi-annual premium of January 14, 1927, was not paid when due, but on February 12, within the grace period, the insured applied to the company for an extension of time for payment, upon conditions, to which we shall hereafter more specifically refer, set out in full on the back of the application. Under the arrangement made, the time was extended to April 14, the plaintiff deposited with the company $63.41, and the balance of the premium was to be paid on the extended date.

On April 20 the insured, who had failed to make payment of the balance due, $36.87, on April 14, went to the office of the company at Rock Hill, S. C., to see about the matter, and was told by defendant's cashier and agent that the policy had lapsed through such failure. At that time, however, he paid the company the $36.87, which amount was received and accepted by it, and also made application for reinstatement of the policy. Later he was examined by a company

physician, who reported his physical condition to be good, but called attention to the tubercular trouble which the insured had had in 1923—a matter, however, already known to the insurer. The company refused to reinstate the policy with the double indemnity accident and total disability benefits, giving as its reasons the applicant's former tubercular trouble, but indicated that it was willing to issue a straight life policy without these provisions. Thereafter, in May, 1927, he signed a paper prepared by and addressed to the company, indicating his willingness to accept such a policy, and one of that kind was then issued him. Later, the company sent him a check for $3.93, which was accepted by him, as a refund of a part of the premium money that had been paid. In 1930 the insured became totally disabled, and thereafter made demand upon the company for reinstatement of his original policy containing the total and permanent disability benefit provisions, but his request was refused. He then brought this action against the defendant for "breach of contract accompanied by fraudulent acts," seeking damages, actual and punitive, in the sum of $2,999.00.

The gist of the complaint is that the policy providing for total and permanent disability benefits was improperly taken from the insured by the defendant, and that he was forced to accept a new policy without such benefits; that the company accomplished this, through its agent, by falsely stating to the plaintiff that his policy had lapsed because of his failure to make payment of the premium due January 14, 1927, and by inducing him, through false statements, to be examined for reinstatement of the policy, upon the assurance that, if he did so, it would be good thereafter. The company denied all allegations of fraud, and alleged that the change in the policy was brought about by its lapse and by application of plaintiff for its reinstatement; that the insured agreed in writing to such change, and requested that a policy without total and permanent disability benefits be issued him; the original being thereby reinstated with the exception of such benefits.

The case was tried at the May, 1932, term of Court of Common Pleas for Chester County, and resulted in a verdict for the plaintiff for the whole amount asked for. From judgment entered thereon this appeal is taken.

The exceptions, five in number, all relate to Judge Stoll's refusal to direct a verdict for the defendant.

The first question presented is whether the policy lapsed on April 14, 1927. The appellant contends that the uncontradicted evidence shows this to be true, and that such lapse was brought about, not only by the terms of the policy, but by the conditions of the extension agreement between the parties. The position of the respondent is that "the policy does not provide for a forfeiture if the extension premium is not paid promptly, and the conditions of extension do not permit a cancellation of the policy and a retention in full of the premium already paid"; and that "no new stipulations of forfeiture can be added to the policy in this way."

Turning to the original contract of insurance, we find the following provision: "Except as herein expressly provided, the payment of any premium or installment thereof shall not maintain this policy in force beyond the date when the succeeding premium or installment thereof becomes payable."

On the back of the application for extension were printed the terms and conditions upon which the deposit was made and the extension requested, which, in purport, are the same as those printed on the back of the company's "formal notice" to the applicant that the extension was granted. This notice, or "receipt," dated February 12, 1927, was signed by the secretary and countersigned by the cashier or collecting agent of the company, and was as follows:

"THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, NEW YORK, N. Y.

"Agency at Rock Hill, 2/12/1927

"The time for the payment of the premium due January 14, on Policy No. 2404212 subject to the terms and condi-

tions on the back hereof, is extended to April 14, 1927, and the receipt of..........Dollars ($63.41) is hereby acknowledged, which together with previous deposits of $.......... now applied to same purpose makes a total deposit of $...........

"Should the balance of the premium (with interest at 5% per annum) remain unpaid at the expiration of this extension the Equitable shall return to the depositor on demand any balance of the total deposit remaining after the deduction of the percentage of the premium required as compensation for the privilege of this extension. Any previous receipts for deposit made in connection with this premium, are hereby cancelled."

. On the back of this paper were printed the following conditions of extension:

"The within policy shall continue in force until the extended date without grace; if the difference between the total deposit and the amount of the premium, with interest upon such difference from the original due date of the premium at the rate of five per cent per annum shall be paid to the Equitable on or before the extended date, the same, together with the amount deposited, shall then be accepted in payment of the premium and the policy shall be continued as if the premium had been paid when due; if such payment is not made on· or before the extended date ·without demand or notice, the Equitable shall retain out of the amount deposited an amount equal to 5% of the premium if payable annually, 10% if payable semi-annually, or 20% if payable quarterly. for each month from the original due date of the premium to the extended date (except that if the policy be on the term plan a pro rata premium shall be retained) as compensation for the privilege of this extension and on demand shall repay the balance to the depositor and after such extended date all rights under the policy shall be the same as if .this agreement and deposit had not been made, except that the time for electing any option upon lapse

granted by the policy shall begin to run from the extended date and not from the due date of the premium.

"Due and sufficient notice with regard to this premium, whether required by the statutes of any state or otherwise, has been given, and in consideration of the extension applied for every other or further notice has been waived."

It will be observed that the "extension agreement" provides that, if the difference between the total deposit and the amount of the premium should be paid, with interest, on or before the extended date, that sum, with the amount already deposited by the insured, would be accepted by the company in payment of the premium due on January 14, and the policy would be continued in force as if the premium had been paid when due. It is conceded that the amount deposited with the company on February 12, $63.41, had it been applied to the payment of the premium, would have kept the policy in force for more than four months from January 14, or beyond April 20. The crucial question, therefore, is whether the company, having received and accepted from the insured such sum of money, could declare the policy lapsed at the end of three months, and thereby create a forfeiture under the terms of the extension agreement. The trial Judge held that this, in the circumstances, was a question for the jury. In other words, he submitted for their determination whether, under the admitted facts, the company was estopped to assert that there was a lapse of the policy.

We think, under the peculiar facts of this case, the trial Court might properly have held, as a matter of law, that there was no lapse of the policy on April 14. As we have already stated, the policy was in full force at the time the extension was granted, and the company at that time received from the insured a sum of money sufficient to have kept it in force for a period of more than four months from January 14. Even though the provisions of the extension were to the effect that the time for payment of the premium was extended to April 14 without grace, the receiving and ac-

ceptance by the company of such sum of money, which it could have applied to the payment of the premium due and thereby prevented a forfeiture, not only introduced the element of estoppel, but constituted a valid consideration for waiver by the company of punctual payment by the insured of the balance of premium on the date fixed in the extension agreement. If, however, it should be thought that we are wrong in this, and that there was a lapse as contended for by the appellant, there can be no doubt that the acceptance by the company, on April 20, of the balance of the premium, which it claimed should have been paid on April 14, was a consideration for and operated as a renewal of the policy; the evidence is undisputed that such acceptance by the company was voluntary on its part and was made with full knowledge of all its rights in the matter. In any view, the defendant has no ground for complaint that the trial Judge submitted the question to the jury.

Nor do we think, as contended by appellant, that there was a ratification, as a matter of law, by plaintiff of the entire transaction. This question, under all the testimony, was one for the jury, and the trial Judge properly refused the motion for a directed verdict on that ground.

Nor can the contention of the appellant, that no actual damages were proved, be sustained. If the insured was induced, as he testified, by statements of the company to give up a life policy containing accident and total benefit provisions, and to accept in lieu thereof one of lesser benefits, he was undoubtedly damaged to the extent of being deprived of such benefits.

We think, however, from a careful study of the record, that the Court should have granted the defendant's motion for a directed verdict as to punitive damages. In view of the conditions of the "extension agreement," it is easily seen that the company, in taking the position that it did, as to the lapse of the policy, was acting *bona*

*fide* for the protection of what it believed to be its legal rights; and its acts, being based upon such conclusion, cannot be held fraudulent and intended to cheat the insured out of his rights under the policy.

With regard to the matter of reinstatement, the position taken by the respondent cannot be sustained.

The policy provided that, in case of lapse in consequence of nonpayment of any premium when due, it might be reinstated at any time upon production by its holder of evidence of insurability satisfactory to the society, etc. Under this provision, reinstatement was a matter of grace on the part of the company. See *Ginyard v. Insurance Company,* 135 S. C., 48, 133 S. E., 227.

Under the view taken by the Court, as the verdict was for a lump sum, the case must be remanded for a new trial as to actual damages. The measure of such damages is the amount due the insured, if any, under the total and permanent disability provisions of the policy, plus any premiums which he may have paid the company during such period of disability, the payment of which may be waived by any provision of the policy.

The judgment is reversed and the case remanded for a new trial in accordance with the views herein expressed.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES CARTER and BONHAM concur.