14288

STURKIE v. COMMONWEALTH LIFE INS. CO. OF
LOUISVILLE, KY.

(185 S. E., 541)

 July, 1935.

*Mr. Robert Moorman,* for appellant, 

*Messrs. T. P. Taylor, W. W. Hawes* and *A. F. Spigner,* for respondent, 

May 5, 1936.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

The action of the plaintiff is based upon a policy of insurance on the life of her mother, Sarah F. Williams, issued by Commonwealth Life Insurance Company of Louisville, Ky., on December 9, 1929, which designated the plaintiff as beneficiary. The action is brought for actual and punitive damages, alleged to have been caused by the unlawful and fraudulent conduct of the defendant in lapsing and canceling the policy.

The plaintiff at the time of the issuance of the policy, resided in the City of Columbia, and paid the premiums of 30 cents each week thereon until about April 14, 1930, when she and her family moved to a farm near Blaney, which is distant from Columbia about 25 miles. From this date until the first part of October, 1932, the weekly premiums were paid by the plaintiff's sister-in-law, Lorah Sturkie, who resided in Columbia, the money for the premiums being furnished by the plaintiff. It appears from the testimony offered for the plaintiff that the premiums were paid by Lorah Sturkie to the defendant's collecting agent, a Mr. Smith; he called regularly at her home to collect these premiums.

Later Mr. Smith was replaced by another collecting agent, who called and collected the premiums regularly until October, 1932, when he told Mrs. Sturkie that he intended to turn all of the records in connection with the policy over to the home office in Louisville, Ky., because he feared that the policy was going to be dropped through the nonpayment of premiums, and that he did not wish to lose the percentage out of his debit book. Mrs. Sturkie told him that Mrs. Williams, the insured, was very sick; that there was no intention of dropping the policy through failure to pay the premiums, and requested him not to send the policy to the home office. This agent refused to accept any further premiums on the policy, although he was urged to accept them. Shortly thereafter the plaintiff, learning of the action of the defendant's agent in refusing to accept further premiums, went to Columbia from her home at Blaney, for the purpose of interviewing the local manager of the defendant at his office. She went to the office, identified herself, and told a young lady, who apparently had charge of the office and was attending to its duties, that she wished to pay the premiums due on the policy. The young lady opened a book or record, and after examining it stated to the plaintiff that she could not accept the money; that the plaintiff would have to see the manager, who was not in at that time. Later in the day, the plaintiff telephoned the office and talked with the

local manager, told him who she was and the nature of her business, and requested that he remain in the office until she could get there; he promised to do so, but when she arrived at the office within twenty minutes thereafter, she found that the manager had gone. She again urged the same young lady employee to accept the premiums, but she refused to do so, saying that the manager had not mentioned the insurance to her before leaving the office.

The plaintiff then returned to her home at Blaney.

She went again to Columbia one day the following week, in the persistent effort to pay the premiums; again she went to the office of the defendant, twice on that day, and each time the defendant's agents refused to accept her money as a payment on the premiums. On this latter occasion, she found at the defendant's office the same young lady in charge, and another woman employed there, who assumed control of the matter. She refused to accept the premium money, and told the plaintiff that her refusal was due to the intention of the manager to send the policy to the home office in Louisville, and that future payments would have to be made at that office. Upon request she, in effect, refused to explain to the plaintiff how remittances might be sent to the home office. She told her that she did not know when the manager would return to the local office.

All of this took place in October, 1932, as shown by the plaintiff's testimony.

It is admitted that the policy was in force at that time, and that it remained in force until November 21, 1932. The policy was transferred to the home office on or about November 7, 1932.

The policy provided that premiums might be paid to any authorized agent of the company.

The plaintiff, failing to get the defendant's agents in its office in Columbia to accept the premiums, made no further effort to pay them.

Sarah F. Williams, the insured, died on or about March 1, 1935, after which the plaintiff made demand upon the de-

fendant for the amount of the said policy, to wit, $144.00, which demand was refused; whereupon the plaintiff brought this action.

The trial of the case in the County Court for Richland County resulted in a verdict for the plaintiff in the sum of $45.00 actual damages, and $1,500.00 punitive damages.

Several questions presented by the appeal will now be considered.

The appellant insists that there is an absence of testimony going to show that the alleged agent who succeeded Mr. Smith, to whom Mrs. Lorah Sturkie testified she paid some premiums, was an authorized representative of the insurance company. Mrs. Sturkie stated that she did not know the name of this agent, but that he accepted the premiums for some time prior to October, 1932, and entered them in the premium receipt book. It was this agent who informed her that the policy would be forwarded to the home office, and that no further premiums would be accepted locally. It is certainly inferable from the evidence that all premiums which Mrs. Sturkie says she paid to this man were duly received by the defendant and applied by the company to the policy; otherwise the policy would have lapsed prior to November 21, 1932. She says that during this period she had not paid premiums to any other person. And it is admitted by the defendant that the policy was not canceled until November 21, 1932.

Agency may be established by circumstances, apparent relations, and conduct, and may be proved by circumstantial as well as positive testimony. We think that this evidence was sufficient to be submitted to the jury upon the question as to whether this man was a duly authorized representative of the appellant.

It is next urged by the appellant that the trial Judge erred in refusing its motion for a nonsuit as to punitive damages, and in ruling that "where there is any evidence at all in a case it ought to be submitted to the jury." It is evident that

the trial Judge meant that the case should be submitted to the jury if the allegations of the complaint were supported by any material evidence. But apart from this, the testimony was susceptible of more than one reasonable inference as to the issue of fraudulent cancellation, accompanied by a fraudulent act.

This Court has held in numerous cases that where an insurance company refuses to collect or accept premiums, and it is clearly shown that the intention of the company is to cancel a policy which is in force, and upon which rights have accrued, such action on the part of the company will sustain a verdict for punitive damages. *Schultz v. Benefit Association of Railway Employees of Chicago, Illinois*, 175 S. C., 182, 178 S. E., 867, and cases cited therein.

We have summarized the lengthy testimony given on behalf of the plaintiff. Testimony was also given on behalf of the defendant, which is in sharp conflict with that of the plaintiff on the question of alleged fraudulent cancellation of the policy, and all the facts and circumstances leading up thereto.

Punitive damages are not recoverable for mere breach of contract. To recover damages of that character in a case of this kind the plaintiff must show that the breach was accomplished with a fraudulent intention, and was accompanied by a fraudulent act. *Williams v. Metropolitan Life Insurance Company*, 173 S. C., 448, 176 S. E., 340, 345; *Welch v. Missouri State Life Ins. Co.*, 176 S. C., 494, 180 S. E., 447. It was inferable from the testimony that the contract had been breached by the defendant with a fraudulent intention, accompanied by a fraudulent act.

The same authorities apply with reference to the motion made by the defendant for a directed verdict as to punitive damages. The testimony was susceptible of more than one reasonable inference as to the alleged fraudulent breach of the contract by the defendant.

It is finally urged that the verdict of the jury for punitive damages is excessive, unreasonable, and based upon caprice, passion, and prejudice.

This question was considered by the trial Judge upon a motion made by the defendant for a new trial. The motion was overruled, and we cannot say under all the circumstances that the trial Judge abused his discretion. While the verdict for punitive damages is full, it is not so large as to justify the inference that it was based upon caprice, or was influenced by passion or prejudice.

We have read the evidence in this case with great care. The facts and circumstances narrated in the testimony for the plaintiff, if believed by the jury, warranted the conclusion that the policy was deliberately lapsed by the defendant, with intention to defraud the plaintiff. This case is very similar in its facts to the case of *Mack v. Life & Casualty Ins. Company of Tennessee,* 171 S. C., 350, 172 S. E., 305.

All exceptions are overruled, and the judgment of the lower Court is affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES CARTER, BONHAM and BAKER concur.