15161

DAVIS v. LIFE INS. CO. OF VIRGINIA

(11 S. E. (2d), 433)

March, 1940.

*Messrs. Thomas, Cain & Black,* for appellant,

*Messrs. E. J. Best* and *Wm. P. Cook,* for respondent,

November 12, 1940.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

The respondent, Bessie A. Davis, instituted this action against the appellant, The Life Insurance Company of Virginia, asking for actual and punitive damages by reason of the alleged wrongful and frudulent lapse of a policy of insurance issued to her by the appellant on April 30, 1934, in the face amount of $500.00. The action was tried on March 28, 1940, resulting in a verdict for the respondent in the sum of $300.00 actual and $300.00 punitive damages. The appellant moved, during the trial, for a nonsuit and directed verdict, and, after the trial, for a new trial, all of which motions were refused by the trial Judge.

The type of policy issued to the respondent, by the appellant, and upon which this suit is based, is that form of contract known as an "Industrial Policy," having a weekly premium, in this instance the weekly premium being the sum of 34 cents, and having a grace period of four weeks.

The appellant in oral argument waived its exceptions creating any question relating to actual damages, leaving for consideration the issue of punitive damages. The appellant then on appeal, admits the existence of sufficient evidence to warrant a jury's finding of a breach of the contract of insurance, but denies that the breach of the contract was accomplished with a fraudulent intention, and accompanied by a fraudulent act. The solution of this question requires a discussion of the facts.

The respondent's testimony showed the purchase of the policy on April 30, 1934, and the payment of the weekly premium by herself, or some one in her employment, up to and including December 13, 1938, and that on December 20, 1938, respondent offered the weekly premium of 34 cents to agents of appellant, who refused to accept the tender, thereby causing a lapse of the policy. The respondent also testified that she had been sick for a long time and confined to her

home, and a portion of the time to her bed, from the first of October, 1938, until some time in April of the following year, and that since December 13, 1938, she had made application for insurance but was rejected. To show her physical condition the respondent produced the testimony of a physician who stated he had been treating respondent from during the month of October, 1938, to the date of the trial; that she was suffering from female trouble and a kidney condition, which confined respondent to her home for about four months. The physician also testified that respondent could not be considered as an acceptable insurable risk.

A. B. Reeves, appellant's agent, testified the premium becoming due October 13, 1938, was not paid by respondent and "she sent me word not to let her insurance lapse. She was sick and was not able to pay me at that time;" that he paid four weeks' payments for respondent as she was sick and asked him not to let her policy lapse. Prior to December 13, 1938, Mr. Reeves became ill and did not return to respondent's home until December 20, 1938.

On December 13, 1938, Mr. S. J. Salmon, appellant's assistant manager, went to respondent's home and collected a premium of 34 cents. Mr. Salmon learned from Mr. Reeves that he had paid some premiums for respondent and upon asking Mr. Reeves why he had done so, Mr. Reeves stated he had paid the premiums "due to the fact that Mrs. Davis had been sick he hated to see it lapse."

There is considerable conflict in the testimony concerning what occurred on December 20, 1938, when appellant's agent, Mr. Reeves, and its assistant manager, Mr. Salmon, went to the place of business and home of respondent for the purpose of collecting the weekly premium (or premiums) on the policy of insurance, but respondent's testimony is to the effect that she tendered the only premium due, 34 cents, and appellant's agents refused to accept same, and told her they were going to lapse the policy. At that time, according to the books of the appellant, all premiums had been paid

through December 13, 1938, but the receipt book of respondent showed the premiums paid only to October 31, 1938, with a notation reading: "All Receipts to date—12-13-38 All Receipts out" entered in the column in the policyholder's receipt book where the collecting agent signs his name when receipting for the collection. While the testimony is to the contrary, it is clearly indicated by this receipt book that the last entry therein made by Reeves, the collecting agent, was on 10/19 when receipting for the premium due September 12, and that all the entries following were made by Salmon. Accepting as true the version of either the respondent or the appellant as to the premium payments, the record of such is not entered upon respondent's receipt book.

Irrespective of the great conflict in the testimony, the respondent's receipt book does not correspond with the appellant's records, unless the "Notation" above referred to was intended to receipt for all weekly premiums up to and inclusive of December 13, 1938; and respondent's testimony is to the effect, as aforestated, that either she or some one for her, and with her money, had made all payments due and payable until the payment which was tendered on December 20, 1938. But we need not let this concern us, since on oral argument it was admitted by appellant that on December 20, 1938, the policy was in full force and effect, and was not lapsable for nonpayment of premiums until January 2, 1939. The testimony of both respondent and appellant establishes the fact that it was the invariable custom for the premiums to be paid at the place of business and home of respondent, an agent of appellant coming for same; that respondent had been sick since the first part of October, 1938, and that the collecting agent knew of this, and the assistant manager of appellant's local office had been informed by the said agent of this fact.

In *Sturkie v. Commonwealth Life Ins. Co.*, 180 S. C., 177, 185 S. E., 541, 543, it is stated: "This court has held in

numerous cases that where an insurance company refuses to collect or accept premiums, and it is clearly shown that the intention of the company is to cancel a policy which is in force, and upon which rights have accrued, such action on the part of the company will sustain a verdict for punitive damages. *Schultz v. Benefit Association of Railway Employees of Chicago, Illinois,* 175 S. C., 182, 178 S. E., 867, and cases cited therein."

We have read the evidence in this case with great care, and viewed in the light of all the circumstances, we are of the opinion that the trial Judge was warranted in submitting the issue of punitive damages to the jury. It was inferable from the testimony and circumstances that the contract had been breached by the appellant with a fraudulent intention, accompanied by a fraudulent act.

Judgment affirmed.

MR. CHIEF JUSTICE BONHAM, MESSRS. JUSTICES FISHBURNE and STUKES and MR. ACTING ASSOCIATE JUSTICE L. D. LIDE concur.