## BELSER v. MUTUAL LIFE INS. CO. OF NEW YORK.

### Civil Action No. 1078.

District Court, E. D. South Carolina,
Columbia Division.

May 25, 1948.

C. T. Graydon and R. Beverly Herbert, both of Columbia, S. C., for plaintiff.

Pinckney L. Cain and John W. Thomas, Jr., both of Columbia, S. C., for defendant.

WYCHE, District Judge.

Pursuant to application the defendant issued its policy of insurance dated April 25, 1917, insuring the life of the plaintiff in the amount of $5000, in consideration of the payment of an annual premium of $112.80. The policy of insurance was kept in force until 1941 when it lapsed for non-payment of the premium due on April 25, 1941, the time of payment for which was extended to July 25, 1941, under the provisions of the policy. When the policy lapsed it was continued as extended term insurance under its automatic non-forfeiture provisions until January 16, 1942.

The provisions of the policy pertinent to the issues involved in this controversy are as follows:

"Reinstatement.—Unless it shall have been surrendered for its cash value, this Policy may be reinstated at any time within three years from date of default in payment of any premium, upon evidence of insurability satisfactory to the Company and upon payment of the arrears of premiums with interest thereon at the rate of five per centum per annum; and, at the

option of the Insured, either (a) upon payment in cash to the Company of any indebtedness which existed at said date of default, together with interest thereon as specified in the loan provisions of this Policy; or (b) upon reinstatement of such indebtedness, increased by interest thereon as specified in the loan provisions of this Policy, provided such reinstated increased indebtedness does not exceed the loan value at the date of reinstatement."

"Conditions: * * *

"Occupation.—If, within the period of one year after the date of issue of this Policy, the Insured shall engage in military or naval service in time of war or in any work as a civilian in any capacity whatever in connection with actual warfare, and shall die within one year from the date of beginning such service or work, the Company's liability hereunder shall be limited to one-fifth of the face amount of the Policy, unless, prior to the date of beginning such service or work, a single extra payment of three per centum of the face amount of the Policy shall have been made to the Company. As to other occupations of the Insured, the Policy is subject, during the first year following its date of issue, to the restrictions stated in the application, copy of which is endorsed hereon or attached hereto.

"After one year from its date of issue, this Policy is free from any restriction as to military and naval service, and is free from any restriction as to all other occupations of the Insured."

Certain questions and answers in the original application for the policy of insurance, also pertinent to the issues involved herein, are as follows: "7. I do not contemplate any change of occupation, or becoming connected with any military or naval organization or service or going to any foreign or tropical countries except: (if none, so state). Officers' Reserve Corps. 8. Are you connected with any military or naval organization or service, officially or otherwise? (Ans. Yes or No). Not yet commissioned but qualified."

The application also contained the following provision: "It is understood and agreed that during the period of one year following the date of issue of the Policy of Insurance for which application is hereby made, * * * (c) if, during said year, I shall engage in military or naval service in time of war or in any work as a civilian in any capacity whatever in connection with actual warfare, and shall die within one year from the date of beginning such service or work, the Company's liability shall be limited to one-fifth of the face amount of the Policy unless, prior to beginning such service or work, payment shall have been made to the Company of a sum equal to three per centum of the face amount of the Policy (or of the present value of the amounts payable after death if the insurance is not payable in one sum). * * *."

In due time, on September 30, 1942, the plaintiff made written application for reinstatement of the policy, in accordance with the provisions thereof relating to reinstatement, and complied with all the necessary conditions, and asked that the insurance policy be reinstated in full force and effect, and in accordance with the same terms which had existed prior to its termination. The insured underwent a physical examination in connection with such application and was found satisfactory from a medical standpoint. However, the defendant company took the position that the evidence of insurability submitted by the plaintiff was not satisfactory to the defendant because the plaintiff was then in the United States Army, and for this reason refused to reinstate the policy as originally issued, but offered to reinstate the policy subject to what is commonly known as a war clause, informing him that a policy with the war clause was the only type of policy it was then willing to issue to him.

The plaintiff chose to treat this action on the part of the defendant as a breach of the contract of insurance, and he so notified the defendant. The defendant replied by stating that its position was the same as before, but that because of the necessity for cooperation in the United States, in view of world affairs at that time, it would reinstate plaintiff's policy according to its old terms without a war clause. The plaintiff stood steadfast in his position that defendant had broken its

contract with him and that there was no longer any contractual relations existing between them. He stated on the witness-stand that at this point in his dealings with the defendant he had lost all faith in the fairness and future bona fides of the defendant and that he did not believe that he would get a square deal from the defendant. The plaintiff was then in the military service and was therefore unable to obtain other insurance without the so-called "war clause", which restricted his recovery, in case of death in connection with war activities, to premiums actually paid.

Plaintiff, during pendency of negotiations with the defendant, undertook and did take out a policy of life insurance with the John Hancock Mutual Life Insurance Company, which provided for a yearly premium of $152.15 for a period of five years from date, and thereafter until the death of the insured, for a yearly premium of $304.30. Under the John Hancock policy, during the probable life of the plaintiff, based upon the ordinary mortuary tables, and disregarding the fact that he was engaged at the time in the military service, the premiums which plaintiff would be required to pay in excess of the premiums under the policy with the defendant company, would amount to $3,069.25. It appears from the evidence that in order to secure a policy of insurance free from such war clause, if such a one could be obtained, it would probably be necessary for the plaintiff to pay an additional premium of $90. per thousand dollars of insurance, amounting to $450 per year, or for the four year period of the last war, a total of $1800. It would follow that plaintiff would be required to pay at his then age an additional premium of $3,069. for the John Hancock policy of life insurance, subject to the war clause, or possibly an amount of $4,869.25 for an ordinary life policy without such war clause.

Plaintiff is still a member of the Reserve Officers Corps, holding a commission of Colonel of Field Artillery in the United States, and is liable again to be called back to serve in the event of war, which is a possibility.

At the conclusion of plaintiff's case, the defendant moved for an involuntary non-suit, and at the conclusion of all the evidence, for a directed verdict. I took both motions under advisement. Counsel for plaintiff and defendant agreed with the Court that as to the action for actual damages only a question of law was presented, as to whether there was a breach of the contract, as to whether there were any actual damages, and as to what the actual damages, if any, were. I submitted the issue of punitive damages to the jury, reserving my decision upon defendant's motion for directed verdict. The jury found a verdict for the plaintiff in the sum of $4,500 punitive damages. Within seasonable time the defendant moved for judgment notwithstanding the verdict, and in the alternative, also moved for a new trial.

The main question to be determined in this case is, did the defendant insurance company have the right to refuse to reinstate plaintiff's policy of insurance on the ground that he was a member of the armed forces, and for this reason no longer insurable?

As hereinbefore stated, the policy provides that "After one year from its date of issue, this Policy is free from any restriction as to military and naval service, and is free from any restriction as to all other occupations of the Insured." It appears from the plaintiff's original application for the policy of insurance that he contemplated at that time becoming a member of the armed forces if the occasion arose. The contract of insurance was entered into with this possibility in the minds of the parties. The defendant then contracted that it would not consider this as an element of the plaintiff's insurability upon his request for a reinstatement of the policy under the provisions thereof. Under the terms of the policy the last date upon which the defendant could deny full liability under the policy because of plaintiff's death in the armed forces was April 24, 1919. If the plaintiff lived beyond that date without dying from some injury received in the armed forces the company expressly contracted not to deny the company's full liability under the policy because of the fact that the plaintiff was a member of the armed forces or was injured and killed while occupied as a soldier

in the army. This constituted an agreement on the part of the defendant that it would not, after one year, attempt to impose a war clause in the plaintiff's policy and thereby limit defendant's liability. That is what the defendant tried to do and this constituted a breach of the company's contract with the plaintiff.

In the light of my view of the contract of insurance, it is not necessary to discuss the various interpretations that the courts have placed upon the word "insurability" when used in reinstatement clauses in insurance policies.

The fact that the defendant offered to perform its part of the contract after it had broken its agreement cannot avail the defendant as a defense to the plaintiff's cause of action. At most, it could only be considered in mitigation of damages suffered by the plaintiff by reason of the breach of the contract. "When there has been an actual breach of contract the plaintiff's right of action accrues and cannot be defeated by a subsequent offer to perform; and this will be the case not only where a precise date for performance is fixed, but also where the nature of the contract is such that delayed performance will not fulfill the purpose of the contract." Williston, Law of Contracts, Rev.Ed., Section 1295.

In the case here the date for performance of defendant's obligation, that is, to reinstate plaintiff's policy without a war clause, was at any time within three years after the lapse of the policy when the plaintiff should elect to have it reinstated and should meet the necessary requirements placed upon him by the provisions of the policy. The plaintiff demanded reinstatement of his policy within three years and fulfilled all the requirements that he had to meet. Having done this, it was incumbent upon the defendant to perform its part of the agreement. It did not do so and there was a breach of the contract. No subsequent offer to perform by the defendant could defeat the plaintiff's right of action.

The South Carolina rule with reference to the measure of actual damages for breach of a life insurance contract is laid down in the cases of Pack v. Metropolitan Life Ins. Co., 178 S.C. 272, 182 S.E. 747, and Rogers v. Jefferson Standard Life Ins. Co., 182 S.C. 51, 188 S.E. 432. In the opinion of the trial court in the Rogers Case, which the Supreme Court approved and ordered printed, the South Carolina rule with regard to measure of damages was expressed as follows: "It is almost uniformly held that where the insurance company wrongfully revokes its policy, and refuses further to be bound by it, the holder may elect whether to enforce the contract or to treat it as rescinded. If he elects to pursue the latter course, there is much conflict among the courts of the various jurisdictions as to the measure of damages.

"Perhaps a majority of the courts have adopted the rule that the measure of damages is the amount of premium paid, with interest, without any deduction for the protection afforded insured under the policy from its inception to the time of its breach by the insurer. Among the leading cases supporting this rule are the following: Van Werden v. Equitable Life Assurance Society, 1896, 99 Iowa 621, 68 N.W. 892; Strauss v. Mutual Reserve Fund, 1900, 126 N.C. 971, 36 S.E. 352, 54 L.R.A. 605, 83 Am.St.Rep. 699; Gaskill v. Pittsburgh Life & Trust Co., 1918, 261 Pa. 546, 104 A. 775; Glover v. Bankers' Health & Life Ins. Co., 1923, 30 Ga.App. 308, 117 S.E. 665; Industrial Life & Health Ins. Co. v. Thomas, 1931, 43 Ga. App. 679, 159 S.E. 885; Bankers' Health & Life Ins. Co. v. James, 1933, 177 Ga. 520, 170 S.E. 357 (combination of life and health policy), also Id., 47 Ga.App. 534, 171 S.E. 161; Supreme Council A.L.H. v. Black, 3 Cir., 1903, 123 F. 650. The reason for the foregoing rule is stated by some authorities as follows: 'Rescission or voidance, properly so called, annihilates the contract, and puts the parties in the same position as if it had never existed', and insured 'may take the defendants at their word, treat the contract as rescinded, and recover back the premiums paid, as so much money had and received for their use.' A few of the courts, although the greater number do not, allow a deduction for the protection afforded assured prior to the breach. Grand Lodge et al. v. Martin, Tex.Civ. App. 1919, 218 S.W. 40.

"On the other hand, the following rule has been adopted by many authorities: If the insured is in a state of health that he can secure other insurance of like nature and kind, his measure of damages is the difference between the cost of carrying the insurance which he has, for the term stipulated, and the cost of new insurance at the rate he would then be required to pay for a like term. (Replacement rule.) If, however, he is unable to obtain other insurance, then his measure of damages will be the present value of his policy as of the date of his death, less the estimated cost of carrying the same, from the date of cancellation, at his then age. (Rule of Commuted Value.) Among the leading cases in support of this rule are the following: Krebs v. Security Trust & Life Ins. Co., C.C. 1907, 156 F. 294; Ebert v. Mutual Reserve Fund, 1900, 81 Minn. 116, 83 N.W. 506, 834, 84 N.W. 457; Mutual Reserve Fund v. Ferrenbach, 8 Cir., 1906, 144 F. 342, 7 L.R.A.,N.S., 1163; Illinois Bankers' Life Assur. Co. v. Payne, Tex. Civ.App., 62 S.W.2d 315.

"For excellent annotations reviewing the various authorities on this question, see 48 A.L.R. 102. * * *

"All of the courts recognize that none of the rules laid down are entirely satisfactory in every case. One rule may result in just compensation under certain circumstances, and under different circumstances may be unjust to the insurer or insured. Necessarily all the circumstances must be taken into consideration in undertaking to arrive at a just measure of damages."

In the case of Pinckney v. American Workmen, 196 S.C. 446, 14 S.E.2d 273, 279, the trial court charged the jury as follows: "' * * * actual damages would be such premiums as were paid by the insured between the time the policy was originally issued and the time that the contract was broken, if you find it was broken, less the value of the protection that the insured had during the time the policy was in force, plus any damage that the plaintiff may have suffered as a result of the breaking of the insurance contract or the lapsing of the policy, as it is generally called. That damage would be the difference in prem-

iums, in the amount of premiums that one would have to pay to take out insurance at an older age in life, the difference between the premium at the time she took out the original policy and the premiums she would have to pay out at a later age if she could take out other insurance. Sometimes an element of damages is the inability to secure other insurance, but I charge you that you can't consider that in this case, because there is no evidence that this insured might not be able to obtain insurance in some other company, therefore you can't award plaintiff any damages because of her inability to procure other insurance in the place of the one she originally had.

" 'The element of damages where it has been proved that the contract was broken or breached by the defendant insurance company would not only include premiums, less the value of the protection during the time the policy was in force, but it would also be the difference between the original premium and the premium that one would would have to pay at another age, at a later time, for other insurance.' "

This charge was approved by the Supreme Court of South Carolina in the following words: "This instruction was, we think, suited to the evidence in this case and was, therefore, in conformity with the authority of Rogers v. Jefferson Standard Life Insurance Co., 182 S.C. 51, 188 S.E. 432; * * *. See also Pack v. Metropolitan Life Insurance Co., supra."

The measure of damages, under the facts in this case, in my opinion, should be the amount of the premiums paid, with interest, without any deduction for the protection afforded insured under the policy from its inception up to the date of the trial of this case.

The premiums paid to the defendant company upon the insurance policy amounted to $2,707.20. Simple interest should be computed on the premiums from the date of each payment at the legal rate (that is, at seven per cent. per annum to July 1, 1934, and six per cent. per annum thereafter) up to the date of the trial. From the principal amount of the premiums, together with the interest thus calculated thereon,

should be deducted the amount of the note made by the plaintiff and held by the insurance company in the sum of $1,568, with interest of $94.80, as calculated by the defendant company in its letter of September 26, 1942, which amount was tendered by the insured in his letter of October 1, 1942, and thereafter declined by the company. The amount of this credit, therefore, is the sum of $1662.80, which should be applied against the total amount of the premiums paid with interest thereon to be calculated as above stated. Counsel may submit calculation accordingly.

Upon the question of punitive damages, the Supreme Court of South Carolina has repeatedly held that no recovery for punitive damages will be allowed unless there is evidence that the breach of the contract was accomplished with a fraudulent intention and accompanied by a fraudulent act. Bradley v. Metropolitan Life Insurance Co., 162 S.C. 303, 160 S.E. 721; Derrick v. North Carolina Mut. Life Ins. Co., 167 S.C. 434, 166 .S.E. 502; Williams v. Metropolitan Life Ins. Co., 173 S.C. 448, 176 S.E. 340; Welch v. Missouri State Life Insurance Co., 176 S.C. 494, 180 S.E. 447; Sturkie v. Commonwealth Life Ins. Co., 180 S.C. 177, 185 S.E. 541; Jordan Equitable Life Assur. Society, 170 S.C. 19, 169 S.E. 673; Harwell v. Mutual Benefit Health & Accident Ass'n, 207 S.C. 150, 35 S.E.2d 160, 161 A.L.R. 183; Holland v. Spartanburg Herald-Journal Co., 166 S.C. 454, 165 S.E. 203, 207, 84 A.L.R. 1336.

In Holland v. Spartanburg Herald-Journal Co., supra, it was said: " 'It is needless to say that proof of the mere violation of a contract will not support an allegation of fraud,' is the language of the court in Caldwell v. Duncan, 87 S.C. 331, 69 S.E. 660, 663. This statement is quoted with approval in Coleman v. Stevens, 124 S.C. 8, 117 S.E. 305.

"The motives of one who breaches a contract may be disregarded in estimating the amount of recoverable damages. Only in cases of a fraudulent act accompanying the breach can the recovery be more than such damages as are the natural and proximate result of the breach. Prince v. State Mut. Life Insurance Co., 77 S.C. 187, 57 S.E. 766.

"In Givens v. North Augusta Electric & Imp. Co., 91 S.C. 417, 74 S.E. 1067, 1070, the case of Welborn v. Dixon, supra, is again followed; the Court saying: ' * * punitive damages are not recoverable for breach of contract, except where the breach is accompanied by an intent to defraud.' This opinion was by Mr. Justice Hydrick, who later in Donaldson v. Temple, supra [96 S.C. 240, 80 S.E. 437], changed the word 'intent' to 'act.' * * *

"The making of a contract is a legal right enjoyed by the public generally, and no man is denied the right to break a contract; but in so doing he makes himself liable for the consequences in such damages as are the natural result of his act. The mere fact that a contract was broken does not carry with it the stigma of fraud, bad faith, malice, or wantonness. Frequently a contract is broken from dire necessity or the utter inability of one party to perform, and such cases would be entirely free from fraud or other evil intent. To further illustrate the difference between claims for punitive damages in suits ex contractu and suits in tort, acts of willfulness will support punitive damages in tort cases (Vance v. Ferguson, 101 S.C. 125, 85 S.E. 241) but will not in suits arising ex contractu (Welborn v. Dixon, 70 S.C. 108, 49 S.E. 232, 3 Ann.Cas. 407), and especially in breach of contract cases, although in such cases the voluntary breach is of necessity an act of volition, or the exercise of the will, on the part of the one who breaks the contract."

In this case I am of the opinion that the action of the defendant company was arbitrary in refusing to reinstate the policy of insurance as originally issued. However, I cannot say that its action in refusing to reinstate the policy was with a fraudulent intent and accompanied by a fraudulent act. It is, therefore, my opinion that the motion of the defendant for judgment in its favor as to punitive damages, notwithstanding the verdict therefor rendered by the jury upon the trial of the cause, should be granted.

Counsel may submit an order for judgment for actual damages as herein measured.